EISNER JAFFE
CHRISTOPHER FROST (SBN 200336)
cfrost@eisnerlaw.com
SARAH F. POWERS (SBN 238184)
spowers@eisnerlaw.com
9601 Wilshire Boulevard, Suite 700
Beverly Hills, California 90210
Telephone: (310) 855-3200
Facsimile: (310) 855-3201

Attorneys for Defendant,
EQUITYKEY REAL ESTATE
INVESTMENTS L.P.

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

AARON FOSTER, as an individual and as TRUSTEE OF THE MICHAEL P. FOSTER TRUST,

Plaintiff,

vs.

EQUITYKEY REAL ESTATE INVESTMENTS L.P., a California Limited Partnership and ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN OR INTEREST IN THE PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFF'S TITLE OR ANY CLOUD UPON PLAINTIFF'S TITLE THERETO, and DOES 1 through 100 inclusive,

Defendants.

Case No. 5-17-cv-00067-HRL

Removed From:
Santa Clara Superior Court
Case No. 16CV302320

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6) FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED**

Hrng Date: February 21, 2017
Hrng Time: 10:00 a.m.
Hrng Ctroom: 2 (5th Floor)

Complaint Filed: November 4, 2016
Case Removed: January 6, 2016
Trial Date: None Set

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

In its Motion to Dismiss (the "Motion"), Defendant EquityKey[1] explained and established why Plaintiff Aaron Foster cannot, as a matter of law, meet the standards required to sustain a lawsuit under Rule 12(b)(6)—most notably: (i) the questioned transaction was not a "loan" subject to TILA disclosure requirements; (ii) Plaintiff's claim is plainly time barred; and (iii) his admittedly-competent father's purported failure to understand documents is not in and of itself sufficient under California law to void the transaction.

In his Opposition, Plaintiff ignores the majority of EquityKey's analysis, and otherwise mischaracterizes applicable law and the import of the Complaint's allegations. For instance, Plaintiff's Opposition fails to address the most salient point for the Court to consider in resolving the Motion: if, as a matter of law, there was nothing wrongful in EquityKey's characterization of the subject transaction as "not a loan," then each and every one of Plaintiff's claims fails at the outset. As demonstrated in EquityKey's Motion, this is precisely the case. Unsurprisingly, Plaintiff largely ignored EquityKey's detailed analysis on this point, including the fact that the Federal Reserve Board has already unequivocally stated, both in the plain text of the applicable laws and in its interpretation of those same laws, that transactions such as those reflected in Plaintiff's Complaint are expressly excluded from the exact statutory scheme upon which Plaintiff purports to rely. And if anyone would know what does and does not constitute a loan, it is the Federal Reserve Board, which is charged with conducting monetary policy. Plaintiff's references to "standard dictionary definitions" as to the definition of a "loan" do not assist him, but actually support EquityKey's position.

As for the statute of limitations issue, Plaintiff ignores binding law from this Court holding that a plaintiff's alleged failure to understand the terms of a contract is insufficient as a matter of law to invoke the delayed discovery rule. While Plaintiff now concedes that his TILA claim for rescission is time-barred (*see* Opp. at 7, fn. 4), Plaintiff now argues that although Mr. Foster

[1] All terms are as defined in the Motion.

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

consented to the subject transaction more than six years ago, Mr. Foster's death somehow revives the other applicable statutes of limitation because Plaintiff himself is only now discovering the terms of the option contract agreement. That is not the law. The statute of limitations expired on each of Mr. Foster's claims well before his death, and Mr. Foster never, at any time, asserted that there was any inequity in the transaction—on the contrary, Plaintiff has admitted that Mr. Foster voluntarily entered into the Contract because he wanted to restore his car. The fact that Plaintiff now wishes to inherit Mr. Foster's property without encumbrance is regrettable, but it is not actionable.

For all the reasons set forth in EquityKey's Motion and herein, EquityKey's Motion should be granted without leave to amend.

## II. DISCUSSION

### A. <u>The Option Contract is not a "Loan"</u>

Plaintiff spends a scant half page addressing EquityKey's analysis as to what constitutes "debt" according to the Federal Reserve Board. Plaintiff's only substantive arguments appear to be that: (1) calling something an option contract does not make it so; and (2) EquityKey does not truly risk its investment because it is inconceivable that property values might not appreciate over the course of 10 years. EquityKey has no quibble with the former proposition, though it is irrelevant here as applicable law provides guidance sufficient to permit the Court to conclude, as a matter of law, that the subject Contract is an "option contract" excluding it from the reach of TILA. Plaintiff's second point is simply wrong, and evidences a profound misunderstanding of the economics of the subject transaction.

The California Supreme Court long ago clarified the definition of an "option contract" pertaining to real property as "a Right acquired by contract to accept or reject a present offer within a limited time in the future." *Cty. of San Diego v. Miller*, 13 Cal. 3d 684, 688 (1975), *quoting Brickell v. Atlas Assur. Co., Ltd.*, 10 Cal.App. 17, 22 (1909); *see also* Miller & Starr, 1 Cal. Real Est. § 2:11(Option contracts—definition and requirements) (4th ed.) (same). An option agreement is a unilateral contract whereby, for consideration, the optionor promises not to revoke the offer in exchange for the act of the offeree of payment of the option consideration. *Steiner v. Thexton*, 48 Cal. 4th 411, 418 (2010). An option does not require the optionee to perform any act, but the

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

optionor is bound to perform at the election of the optionee. *Palo Alto Town & Country Village, Inc. v. Bbtc Company*, 11 Cal. 3d 494, 504–505 (1974); *In re Marriage of Joaquin*, 193 Cal. App. 3d 1529, 1532–1533 (1987); *Claremont Terrace Homeowners' Assn. v. United States*, 146 Cal. App. 3d 398, 406 (1983). The optionee receives the right and power to create a bilateral contract by "exercising" the option during the life of the option. *Steiner*, 48 Cal. 4th at 518; *Claremont Terrace Homeowners' Assn.*, 146 Cal. App. 3d at 406.

Pursuant to applicable law, then, the Contract at issue here is an "option contract" expressly excluded from TILA's application. The language of the Contract, on its face, states that "during the Option Exercise Period, [EquityKey has] the right (but not the obligation) to exercise or call the Option" granted to it therein. Complaint, Ex. A at 2. EquityKey agreed to provide notice before the end of the Option Period as to "whether or not [it] will exercise the Option." *Id.* If it decided not to exercise, the Contract would terminate and EquityKey would release the Memorandum of Option and Performance Deed of Trust.[2] *Id.* The "Option" granted by the Contract is the right EquityKey purchased from Mr. Foster "to participate in the Appreciation, if any, of the Property[.]" *Id.* at 1. Notably, Mr. Foster had "no obligation to repay the Option Premium[,]" (*id.*) but after the end of the cancellation period, and once the "Option Premium" was paid to Mr. Foster, he had no right to cancel or revoke the option. In other words, by paying Mr. Foster the "Option Premium," EquityKey entered into a unilateral contract giving it the right to create a bilateral contract in the event Mr. Foster sold the subject property. EquityKey does not merely "call" the Contract an Option Contract—it is defined that way under both TILA and the relevant California caselaw.

As set forth in detail in the Motion, the Contract is also an "investment plan," providing a second reason for its exclusion from TILA's application. Plaintiff argues that to accept that EquityKey is an investor is equivalent to "assum[ing] that EquityKey will never exercise its 'option'

[2] Plaintiff's call for discovery as to "just how often EquityKey has waived its right to recover" (Opp. at 8:21) is unwarranted. As discussed herein below, there have certainly been occasions upon which EquityKey has not exercised its option because property values have declined. But this fact is wholly irrelevant to the determination of whether the Contract is a "option contract" excluded from application of TILA. If, as is true here, the optionor has no obligation to exercise its option (even if it has always done so in the context of a particular type of transaction), the arrangement is an option contract as a matter of law.

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

. . ." Opp. at 8:15-16. This is not true. There are circumstances under which EquityKey might fail to recover its initial investment, including:

- In the event property values are flat or even lower ten years after the transaction. While this is not currently the case for the Property (which became encumbered in 2010), it has occurred for transactions initiated in other periods, especially for those originating in 2006 – 2008.
- Where property values appreciate, but in an amount insufficient to recover EquityKey's initial investment. After the ten-year early termination period, EquityKey is likely to exercise its option during the option period if values have appreciated at all, since that is the only means for EquityKey to recover **any** value. But in some cases, EquityKey stands to lose enormous sums. For example, if EquityKey paid the homeowner 15 percent of the home value, and property prices appreciated by only five percent, EquityKey could exercise and capture only whatever portion of the five percent appreciation it had purchased. Even if it had purchased, as it did in Mr. Foster's case, 100% of the appreciation, this example would result in a 67 percent loss over 10 years.

Indeed, EquityKey's fortunes are tied inextricably to the Case Schiller index by which "appreciation" is calculated pursuant to the terms of the Contract. If home prices increase substantially, EquityKey will realize a return on investment. If prices do not appreciate substantially over the minimum ten-year term, or if prices are flat or lower, EquityKey will lose.[3] By definition, this constitutes an "investment" "in which the party extending capital to the consumer risks the loss of the capital advanced." Commentary, 12 CFR § 226.2(a)(14)-1.[4]

[3] This is the hallmark of an equity investment: its fate is inextricably tied to the performance of the underlying asset (the house). A loan, on the other hand, is characterized by a temporary borrowing of capital, and the promise of the borrower to payback 100% of the capital borrowed, plus a return on the capital driven only by interest rates and time. Loans are designed specifically to not bear price and property risks, they are designed to take on the credit risk of the borrower. Equity investments avoid credit risks and tie themselves only to the performance of the asset. Furthermore, EquityKey is doubly tied to the performance of the property: first, its return is driven by an aggregate measure of local area home prices; second, if the actual property does not keep pace with the price index, EquityKey may be subject to shortfall of its expected return.

[4] The rule that Courts should give deference to interpretations of regulations by agencies responsible for enforcing them is even stronger under TILA. "Congress delegated broad administrative

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

Courts that have considered similar arrangements have also found such contracts not to constitute "loans." *See*, *e.g.*, *Abeles v. Oppenheimer & Co., Inc.*, 662 F.Supp. 290 (N.D. Ill. 1986), judgment aff'd, 834 F.2d 123 (7th Cir. 1987) (forward contracts for the purchase and sale of Government National Mortgage Association certificates did not obligate anyone to pay a debt, and thus were not considered credit under the rules of the Securities and Exchange Commission, which define "credit" in a manner paralleling the Truth in Lending Act); *Great Am. Mortg. Corp. v. TMA Gov't Sec., Ltd.*, No. 86-6369-CIV-NESBITT, 1988 WL 26375, at *2 (S.D. Fla. Mar. 25, 1988) (a contractual obligation to repurchase securities on a certain future date did not create a "debt" under statutory scheme analogous to TILA).

**B. <u>Plaintiff's References to Dictionary Definitions Support EquityKey's Position</u>**

By referring to various dictionary definitions of what constitutes a "loan," Plaintiff has effectively conceded that EquityKey is correct about the nature of the transaction with Mr. Foster. For example, Webster's Third International Dictionary's definition of a "loan" as "[s]omething lent for the borrower's temporary use on condition that it or its equivalent be returned" describes a transaction wholly unlike that set forth in the Contract. First, the Option Premium was not "lent" to Mr. Foster. Rather, the Contract is clear that EquityKey's payment of the Option Premium to Mr. Foster was meant to "purchase the Option [to participate in any appreciation of the Property]." Complaint, Ex. A at 2. Indeed, Mr. Foster had "no obligation to repay the Option Premium" except in the case of breach within the first ten years. *Id.* at 1. Indeed, EquityKey has no right to ever recover the amount paid to Mr. Foster—instead, the right granted to EquityKey is merely the right to participate in the appreciation of the Property, if any. As discussed herein, to the extent the Property depreciated (or appreciated but in an amount insufficient to cover EquityKey's initial outlay), EquityKey had no right to recover even an amount equaling the Option Premium.

Plaintiff's challenge to EquityKey to determine "what amount is owed to EquityKey at the moment and whether EquityKey will demand that or another amount or nothing" only further proves

---

lawmaking power to the Federal Reserve Board when it framed TILA. The Act is best construed by those who gave it substance in promulgating regulations thereunder." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566 (1980).

EquityKey's point. Until EquityKey is informed of a pending sale or other transfer of the Property, or a breach under the Contract, EquityKey is not entitled to recovery of **any** amount. *See* Complaint, Ex. A at 2 ("Option Exercise Period" only begins upon the date EquityKey is informed of a pending sale or transfer, or if the Contract is breached—defined as failure to maintain insurance or keep the Property in decent condition, etc.).[5] This is precisely why EquityKey did not, and could not have, provided any "interest rate" associated with the transaction reflected in the Contract. Because this is **not** a loan, and because EquityKey is not entitled to any recovery until an event triggering the Option Exercise Period, EquityKey could not possibly have known what it would recover (if anything) until such a triggering event. Under these circumstances, without the proverbial crystal ball, any requirement for EquityKey to provide an "interest rate" would be nonsensical and simply impossible.

EquityKey has established, as a matter of law, that the transaction reflected by the Contract is not a loan subject to TILA. Because all of Plaintiff's causes of action are dependent on the alleged wrongfulness of EquityKey's representation that the Contract is "not a loan," all of Plaintiff's claims fail. EquityKey's Motion should thus be granted and, because the defects in Plaintiff's Complaint are apparent on the face of the document and cannot be cured by amendment, no leave to amend should be granted.[6]

[5] Upon the occurrence of an event opening the Option Exercise Period, there is no difficulty in determining the amount owed to EquityKey. As set forth in the Contract itself, EquityKey would first determine the amount of the "Appreciation," which is the percentage difference between the Case Schiller CA-San Francisco (SFXR) Index at the time of the execution of the Contract versus at the time of the Option Exercise. Currently, that Index is at 229.82—the applicable percentage difference, then, or "Appreciation" is approximately 68% (229.82 – 136.74 = 93.08 / 136.74 = 68.0707). *See* Complaint, Ex. A at 1 (Beginning Index Value was 136.74) and 5 (providing formula for determining "Appreciation"). At that point, it is a simple matter of multiplying the original Property value by the Appreciation percentage: $1,200,000 x 68.0707% = $816,848. The current "Zestimate" for the Property is $2,059,328, so the figures are consistent with Mr. Foster having sold $100% of the appreciation of the Property.

[6] Plaintiff's assertion that "the claims made each stand on their own, based upon the same underlying facts" (Opp. at 2:19-20) is a distinction without a difference. If, as is the case here, the "underlying facts" fail as a matter of law to give rise to any liability, no claim can survive under Rule 12(b)(6).

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

**C. Plaintiff's Statute of Limitations Analysis is Flawed**

Plaintiff's analysis of the applicable statutes of limitation in this matter is rife with misapprehensions of law. Plaintiff cites to inapplicable statutes, misinterprets relevant caselaw, and simply ignores caselaw from this very Court that would bar each of his claims. Plaintiff's creative interpretation of the applicable law cannot save his Complaint.

In the first place, Plaintiff appears to be laboring under the misapprehension that Mr. Foster's death somehow revives the applicable statute of limitations. Plaintiff cites no law in support of this remarkable proposition. Instead, in connection with his elder financial abuse claim, Plaintiff simply asserts "this action was brought less than four years after Mr. Foster's death and is therefore timely." Opp. at 5:22-23. But that is not the law. If, as alleged in the Complaint, EquityKey's representation of the Contract as "not a loan" constituted elder abuse, then Mr. Foster would have had four years after the date he discovered, or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse. CAL. WELF. & INST. CODE § 15657.7. Because the alleged fraud was reduced to writing upon the face of the Contract, Mr. Foster would have had until June 10, 2014 (four years after the execution date of the Contract) to bring suit. He did not do so. Accordingly, the claim for elder financial abuse is barred by the statute of limitations, and was barred well before Mr. Foster's death. The fact that Mr. Foster regrettably passed away after the expiry of the applicable statute has no bearing on the analysis.

Second, Plaintiff's assertion that a claim for cancellation of instruments "must be commenced within five years from the end of possession [of the Property]" is a misreading of the applicable law. Plaintiff cites to *Robertson v. Superior Court*, 90 Cal.App.4th 1319, 1328 (2001) for this proposition; however, *Robertson* and the limitations periods described therein relate to adverse possession, a claim Plaintiff has not brought. *See*, *e.g.*, *Salazar v. Thomas*, 236 Cal. App. 4th 467, 477 (2015) (referencing California Code of Civil Procedure sections 318, 319, 320, and 321 as relating to "claims involving adverse possession"). In fact, "the request to cancel [a written instrument] is a request for a remedy, not a cause of action or claim." *Yazdanpanah v. Sacramento Valley Mortg. Group*, No. C 09-02024 SBA, 2009 WL 4573381, at *6 (N.D. Cal. Dec. 1, 2009). *See also Lawson v. CitiCorp Trust Bank, FSB*, No. 2:11-cv-01163 KJM KJN PS, 2011 WL 3439223, at

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

*7 (E.D. Cal. Aug. 5, 2011) (concluding that "cancellation of an instrument is an equitable remedy" and listing cases holding the same).

Accordingly, to determine whether a plaintiff may seek the remedy of cancellation of instruments, courts look to the substance of the underlying allegations, "such that the general statements in the *Robertson* case about real property limitations statutes are not controlling." *In re Estate of Young*, 160 Cal. App. 4th 62, 78 (2008). Where, as here, the pivotal allegations are those of "fraud and undue influence," the statute of limitations applicable to fraud applies. *Id.* And where, as here, the fraud allegations are both time-barred and substantively meritless on their face, no cancellation of instruments claim based on that alleged fraud may survive. *Schwartz v. U.S. Bank, Nat. Ass'n*, No. CV 11-08754 MMM JCG, 2012 WL 10423214, at *8 (C.D. Cal. Aug. 3, 2012) ("A request to cancel the trustee's deed is dependent upon a substantive basis for liability, [and it has] no separate viability.")

Plaintiff's assertion that the statute of limitations for a quiet title claim does not begin to run until a plaintiff is dispossessed of the property fails for similar reasons. In the first place, the "possession" required to toll the statute of limitations in a quiet title lawsuit must be "exclusive and undisputed." *Ankoanda v. Walker-Smith*, 44 Cal. App. 4th 610, 616 (1996). The reason for this qualification is that a property owner may not know that an adverse claimant will "press" its adverse right until such time as the owner loses possession, and thus there is no need for him to go to the "expense and inconvenience of [a potentially unnecessary] litigation." *Id.* But here, just as in *Ankoanda*, the property owner not only knew of the alleged "cloud" on his title, but agreed to it more than six years ago. In other words, the plaintiff "knew or should have known that the 'expense and inconvenience of litigation' would be necessary" to dispute EquityKey's performance deed of trust. *Id.* at 618. Under such circumstances, the statute of limitations in not tolled, and Plaintiff's quiet title claim is time-barred.

Finally, Plaintiff urges the Court to find that the "limitations period is tolled for all claims," but fails to acknowledge binding law by this very Court that holds otherwise. Specifically, this Court has repeatedly ruled that where the purported fraud or deficiency appears on the face of the transaction documents, a plaintiff cannot plead delayed discovery simply because he did not read or

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201

understand the content of those documents. *See, e.g.*, *Sherman v. Washington Mut.*, No. C09-02779 HRL, 2009 WL 2849588, at *2 (N.D. Cal. Sept. 1, 2009) (Lloyd, J.) (no delayed discovery where plaintiffs signed, at time of transaction, a "prominently labeled" document); *Abdollahi v. Washington Mut., FA*, No. C09-00743 HRL, 2009 WL 1689656, at *2 (N.D. Cal. June 15, 2009) (Lloyd, J.) (same); *Alakozai v. Valley Credit Union*, No. C10-02454 HRL, 2010 WL 5017173, at *4 (N.D. Cal. Dec. 3, 2010) (Lloyd, J.) (citations omitted) ("The doctrine [of delayed discovery] is not available to avoid the consequences of one's own negligence and does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights."); *Marcos v. Equity One Lenders Grp.*, No. C11-04000 HRL, 2011 WL 5080101, at *5 (N.D. Cal. Oct. 25, 2011) (Lloyd, J.) (delayed discovery not available because defects appeared on face of documents actually provided to plaintiff).

The law cited by Plaintiff provides the same. Plaintiff cites to *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006) for the proposition that it is rarely appropriate to determine the appropriateness of delayed discovery at the pleadings stage because the analysis often depends on matters outside the pleadings.[7] But Plaintiff admits that the existence of an estoppel is a question of law where, as here, the facts are undisputed. *See* Opp. at 6:24-25, *citing Mills v. Forestex Co.*, 108 Cal.App.4th 625, 652 (2003). Here, the very "fraud" claimed by Plaintiff appears on the face of the documents that Mr. Foster signed more than six years ago. Accordingly, each and every one of Plaintiff's claims is time-barred, and the Complaint must be dismissed.

///

///

///

///

///

[7] Plaintiff neglects to inform the Court that despite this proclamation, the *Huynh* court nevertheless affirmed the decision of the district court to dismiss the complaint as time-barred because plaintiffs' assertions that they "lack[ed] English" and had a "lack of knowledge of the American system" do not constitute cause for equitable tolling of the statute of limitations. *Huynh*, 465 F.3d at 1004.

## III. CONCLUSION

For these reasons, EquityKey's Motion should be granted in its entirety, and without leave to amend.

Dated: January 13, 2017

Respectfully submitted,
EISNER JAFFE

By: /s/ Sarah F. Powers
Sarah F. Powers
Attorneys for Defendant
EQUITYKEY REAL ESTATE INVESTMENTS L.P.

EISNER JAFFE
9601 WILSHIRE BOULEVARD, SUITE 700
BEVERLY HILLS, CALIFORNIA 90210
TEL (310) 855-3200 – FAX (310) 855-3201