UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON FOSTER,<br><br>   Plaintiff,<br><br> v.<br><br>EQUITYKEY REAL ESTATE INVESTMENTS L.P.,<br><br>   Defendant. | Case No.17-cv-00067-HRL<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 8 |

Plaintiff Aaron Foster ("Plaintiff"), as an individual and as Trustee of the Michael P. Foster Trust, sues defendant EquityKey Real Estate Investments L.P. ("EquityKey"). The complaint includes seven claims related to an agreement concerning real property between EquityKey and Plaintiff's father, Michael Foster ("Mr. Foster"), from whom Plaintiff inherited his interest in the real property at issue in this action. Dkt. No. 1, Ex. A. EquityKey moves to dismiss all of Plaintiff's claims on the grounds that they are time-barred and fail to state a claim upon which relief may be granted. Dkt. No. 8. For the reasons explained below, the court grants the motion to dismiss.

## BACKGROUND

Plaintiff alleges the following facts. In 2010, Mr. Foster, then in his early seventies and "still competent," was living alone at his residence at 28 Pennsylvania Avenue, Los Gatos, CA ("the property"). Dkt. No. 1, Ex. A., ¶ 12. Prior to 2010, a fallen tree had damaged Mr. Foster's beloved car, and he sought funds to restore the vehicle. *Id.*

Mr. Foster entered into a contract with EquityKey in June 2010. *Id.*, ¶ 13. The contract states that EquityKey will pay Mr. Foster a $196,000 "option payment" in exchange for Mr. Foster granting EquityKey the right to participate in 100% of the appreciation of his property, if any, for

up to fifty years from the date of the agreement. *Id.*, ¶ 14. The contract is secured by a Performance Deed of Trust and confirmed in a Memorandum of Option (the latter dated March 20, 2012). *Id.* Both the contract and the Memorandum of Option state that the arrangement is an option payment and "not a loan." *Id.* Plaintiff asserts that Mr. Foster entered into this contract based on "false and deliberately misleading" representations by EquityKey, which Mr. Foster reasonably believed "given his age and mental status," that the transaction was an option contract rather than, as Plaintiff claims, a "disguised . . . high cost mortgage." *Id.*, ¶ 19-21. Given that EquityKey's intentionally deceptive efforts prevented Mr. Foster from understanding the true nature of the transaction, Plaintiff alleges, there was no meeting of the minds and no valid contract was formed. *Id.*, ¶ 21.

Mr. Foster passed away in 2016, and Plaintiff became the executor of his estate and the Trustee of the Michael P. Foster Trust. *Id.*, ¶ 15. Prior to his passing, Mr. Foster had told Plaintiff that he "had made a deal for essentially 'free money' and believed that he could not be forced from the home at any time or for any reason." *Id.*, ¶ 16. Only after his father's death, when Plaintiff was going through his late father's records, did he discover the EquityKey arrangement. *Id.*, ¶ 15. Plaintiff alleges that "[d]ue to Michael Foster's age and the complexity of the contract, as well as EquityKey's deliberate effort to hide the nature of the transaction, . . . it was not possible for Michael Foster to understand and/or discover the true nature of the agreement with EquityKey . . . ." *Id.*, ¶ 16. Plaintiff asserts that he himself only realized the "exact nature and terms" of the EquityKey agreement with the assistance of counsel. *Id.* If Plaintiff were to have sold the property at the time of the filing of the complaint, the amount due to EquityKey would have been approximately $705,000.00. *Id.*, ¶ 17.

Plaintiff filed his complaint in Santa Clara Superior Court in November 2016. Dkt. No. 1, Ex. A. The complaint asserts that the contract is actually a high-interest loan secured by the property that was issued without the required disclosures or counseling and that EquityKey fraudulently concealed the nature of the agreement. *Id.*, ¶¶ 1-2. The complaint alleges claims for (1) Rescission for Fraud, (2) Declaratory Relief, (3) Elder Financial Abuse (Cal. Welf. & Inst. Code § 15610.30), (4) Cancellation of Instruments (Cal. Civ. Code § 3412), (5) Quiet Title, (6)

Violations of the Truth in Lending Act ("TILA") (15 U.S.C. § 1601, *et seq.*), and (7) Unfair Business Practices (Cal. Bus. & Prof. Code § 17200, *et seq.*). Dkt. No. 1, Ex. A.

The contract itself, which Plaintiff attached to the complaint, is titled "Property Appreciation Option Agreement." Dkt. No. 7. It states that EquityKey will pay Mr. Foster an "Option Premium" of $196,000 to purchase the option to participate, at a rate of 100%, in the appreciation of the property, if any, from its initial value of $1,200,000. *Id.* at pg. 1; pg. 2, ¶ 1. The grant of the option does not give EquityKey "any present ownership or possession rights with respect to the Property." *Id.*, ¶ 2. EquityKey's right to exercise its option only comes into play if (1) it is informed of a pending sale of the property "or a transfer, conveyance, assignment or other loss of [] ownership," (2) if Mr. Foster breaches the agreement, or (3) if neither of the prior events occurs within the 50-year term of the agreement, EquityKey may call or exercise its option within 90 days of the end of the term. *Id.* At such time, EquityKey may, but need not, exercise its option. If EquityKey decides not to exercise its option, the agreement terminates. *Id.*, ¶ 3. If EquityKey exercises the option at some point during the 50-year option period, Mr. Foster must pay it 100% of the appreciation of the property, which will be calculated by multiplying the percentage change in the S&P/Case-Shiller Home Price Index (for the Metropolitan Statistical Area in which the Property is located) since the date of the agreement by the initial property value. *Id.*, ¶ 5. An Early Termination Charge—equal to the greater of (1) the Option Premium ($196,000) plus 3% of the initial property value plus 12% annual interest,[1] or (2) the amount of appreciation of the property at the time of the breach—applies if Mr. Foster (or his heirs) sells or otherwise transfers the property within 10 years of the date of the agreement. *Id.*, ¶ 11. The contract further states that Mr. Foster agrees to execute a Performance Deed of Trust and Memorandum of Option. *Id.*, ¶ 14. Finally, the agreement states that Mr. Foster "understand[s], acknowledge[s] and agree[s] that it is binding upon his estate, heirs, successors, and beneficiaries. *Id.*, ¶ 22.

---

[1] The Early Termination Charge does not include 3% of the Initial Property Value if Mr. Foster dies and his heirs or estate elect to sell the Property within the first 10 years of the Agreement, but this modification does not apply if the Property is owned by a trust. *Id.*, ¶ 12.

3

As noted in the Plaintiff's complaint, the agreement states that it is "[n]ot a Loan or Security," and is instead "an option in real property." *Id.*, at ¶ 26. The contract also warns that EquityKey's option "may result in you [(meaning Mr. Foster)] (including your heirs, estate, beneficiaries and legal representatives) receiving less from your Property in a sale or other Property Transfer than if you did not enter into this Agreement. We recommend you thoroughly discuss this transaction with your heirs and beneficiaries, as well as your legal, tax and financial advisors to make certain you, and those who may be affected by this transaction, understand and are comfortable being bound by this Agreement." *Id.*, ¶ 4. A similar warning, advising Mr. Foster not to sign unless he has read the entire agreement and encouraging him to seek legal counsel and financial advice before signing, is included in capital letters above the signature line. *Id.*, ¶ 31.

Defendant EquityKey removed this action to federal court in January 2017, Dkt. No. 1, and filed a motion to dismiss one week later, Dkt. No. 14. In its motion, EquityKey argues that all of Plaintiff's claims, each of which EquityKey asserts is founded on a claim of fraud, are time-barred, and that the complaint fails to state a claim upon which relief may be granted because the contract is not a loan as a matter of law. Dkt. No. 8. Plaintiff responds that the statute of limitations has not run on its claims, that the discovery rule or the doctrine of equitable tolling should apply, and that the true nature of the transaction reveals that it is a loan and not an option contract. Dkt. No. 14.

Both parties have consented to magistrate judge jurisdiction. Dkt. Nos. 10, 11.

## LEGAL STANDARD

To survive a motion to dismiss, a complaint must allege sufficient facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Complaints that merely recite the elements of a cause of action are insufficient. *Id.* In considering a motion to dismiss, a court accepts all of the plaintiff's factual allegations as true and construes the pleadings in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "the court

is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Dismissal may also be based on the absence of a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**DISCUSSION**

The court begins its discussion with an analysis of the federal claim.

**I. TILA.**

"Congress enacted TILA to promote 'the informed use of credit' by consumers." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 3d 862, 872 (N.D. Cal. 2010) (quoting 15 U.S.C. § 1601(a)). Thus, the Act seeks to "assure a meaningful disclosure of credit terms" to aid consumers in making informed decisions and protect them from unfair credit practices. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f); *see also* 12 C.F.R. § 226.2(14). A "creditor" under TILA is one who regularly extends consumer credit. 15 U.S.C. § 1602(g). 15 U.S.C. Section 1639 requires creditors to make certain disclosures related to extensions or offers of credit.

TILA, however, does not apply to all transactions. In the commentary discussing Regulation Z, the regulations issued by the Federal Reserve Board to carry out Congress's purpose in enacting the statute, *see* 12 C.F.R. § 226.1 *et seq.*, the Board staff explains that certain situations are "not considered credit." 12 C.F.R. § 226, Supplement I, Subpart A, 2(a)(14). These situations include "[t]he execution of option contracts" and "[i]nvestment plans in which the party extending capital to the consumer risks the loss of the capital advanced." 12 C.F.R. § 226, Supplement I, Subpart A, 2(a)(14)(vii)-(viii).

To determine whether TILA applies to the agreement here, the court must examine its nature (which examination appears to be a matter of first impression, as counsel did not cite—and the court did not find—any decisions evaluating a transaction with these precise features). Is it, as Plaintiff asserts, a high-interest loan or reverse mortgage in disguise? Or is it, as EquityKey argues (and as stated on the face of the transaction documents), an option contract? In analyzing

5

the terms of the agreement, the court must look deeper than its title and assess its substance to determine its true character. *Mahoney v. City and Cnty. of S.F.*, 201 Cal. 248, 258 (1927); *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993).

An option contract is an agreement in which the optionee, through the provision of consideration, "binds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent." *Palo Alto Town & Country Vill., Inc. v. BBTC Co.*, 11 Cal. 3d 494, 502 (1974). The optionor is obliged to perform his or her duties under the agreement because he or she has already accepted consideration. *Id.* at 503. The optionee, on the other hand, has no duties "until, and unless, he accepts the irrevocable offer proposed to him by the optionor." *Id.* For example, in an option contract for the purchase of real property, the optionor offers to sell property at a fixed price and pledges to keep that offer open for a set period of time in exchange for consideration. *See Steiner v. Thexton*, 48 Cal. 4th 411, 418 (2010). The optionee, having provided consideration, may then choose to exercise the option during the set period, in which case the optionor must sell the property at the agreed-upon price; or, the optionee can let the time lapse and the option expire. *Id.*

A loan, on the other hand, has been defined as "anything furnished for temporary use to a person at his request, on condition that it shall be returned, or its equivalent in kind, with or without compensation for its use [otherwise known as interest]." *In re Johnson*, 218 B.R. 449, 456-57 (8th Cir. BAP 1998) (quoting Black's Law Dictionary). Alternatively, the Second Circuit defined a loan as:

> [A] contract by which one delivers a sum of money to another and the latter agrees to return at a future time a sum equivalent to that which he borrows. 'In order to constitute a loan there must be a contract whereby, in substance one party transfers to the other a sum of money which that other agrees to repay absolutely, together with such additional sums as may be agreed upon for its use. If such be the intent of the parties, the transaction will be considered a loan without regard to its form.'

*In re Johnson*, 218 B.R. at 455 (quoting *In re Grand Union Co.*, 219 F. 353 (2d Cir. 1914). This definition was helpfully re-stated in a more recent case defining a loan as "(i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the

6

other party agrees to pay for the sum or items transferred at a later date." *In re Renshaw*, 222 F.3d 82, 88 (2d Cir. 2000). Loans do not require a sum certain to be stated in the contract. *McKay v. Ingleson*, 558 F.3d 888, 891 (9th Cir. 2009). Other courts have emphasized the intent of the parties as an important factor in determining whether a loan was created. *In re Johnson*, 218 B.R. at 456 (citing cases).

For the purposes of TILA, the agreement between Plaintiff and EquityKey is not a loan. Mr. Foster and Plaintiff (should he decide not to sell or transfer the property or otherwise breach the agreement) do not currently owe EquityKey any debt. Further, there is no guarantee that the payment received by Mr. Foster need ever be returned. If EquityKey elects not to exercise its option, Plaintiff will not owe it any money. And as there is no way to know for certain whether calling the option at the end of the 50-year term will be profitable for EquityKey, there is no way to know whether Plaintiff will *ever* be required to pay.[2] Phrased in terms of the definition of a loan from *In re Grand Union Co.*, Mr. Foster did not agree to "repay absolutely" the option premium payment. Finally, contrary to Plaintiff's arguments, the potential return to EquityKey (should EquityKey exercise the option) cannot be characterized as an effective interest rate. The return—based on the increase, if any, in value of the homes in Mr. Foster's Metropolitan Statistical Area—is more akin to a capital gain, like the gain one would realize upon the sale of a stock that has increased in value.

Rather than being a loan, the agreement is as EquityKey describes it: it is an option contract. EquityKey has paid Mr. Foster valuable consideration ($196,000) to secure an option to participate in the appreciation of Mr. Foster's property. EquityKey is not obliged to exercise its option. In fact, if home prices decrease, it would have little reason to do so. If home values increase, but at a rate that is slower than inflation (or at a slower rate than the rate of return one could receive from a prudent investment of the option premium), then even if EquityKey calls the option, it would ultimately lose money on the deal. On the other hand, if Plaintiff elects to sell the Property, and home values in the area have increased, EquityKey can call its option and oblige

---

[2] It appears *likely* that housing values in fifty years will be greater than they were in 2010, and that EquityKey will call the option. But this is not certain.

1 Plaintiff to perform his duties under the terms of the agreement.

2 Though the ability to call or decline to exercise the option makes an option contract a better characterization of the transaction, the agreement also has many features of an "investment plan" as described by the Federal Reserve Board in the Commentary to Regulation Z. Commentary to 12 C.F.R. § 226.2(a)(14)-1. An investment plan is defined as a transaction "in which the party extending capital to the consumer risks the loss of the capital advanced. This includes, for example, an arrangement with a home purchaser in which the investor pays a portion of the downpayment and of the periodic mortgage payments in return for an ownership interest in the property, and shares in any gain or loss of property value." 12 C.F.R. § 226, Supplement I, Subpart A, 2(a)(14)(vii)-(viii). Regulation Z excludes such transactions from "credit," which is defined as "the right to defer payment of debt or to incur debt and defer its payment." 12 C.F.R. § 226.2(a)(14). In the present transaction, EquityKey risked the loss of the capital it advanced. Though property values in the Bay Area have increased since 2010 in a manner that at times has seemed inevitable, the real estate market could have stagnated or declined (and indeed, the painful lessons of the recent economic past warn against assuming that housing prices will only increase). While a decrease in home values would not help Plaintiff today (as he would owe an early termination charge if he transferred the property before 2020), if housing prices are down in four years and Plaintiff sells the property at that time, then EquityKey would lose money on the deal.

Through the provision of consideration, EquityKey has bound Mr. Foster to perform an underlying agreement (to share the appreciation of the property) upon EquityKey's performance of a condition precedent (calling the option). The agreement has all the features of an option contract described above. The court's characterization of the transaction as an option contract and not a disguised loan is fatal to Plaintiff's TILA claim. Since the agreement was not subject to TILA's disclosure requirements, EquityKey did not violate the statute for not making TILA disclosures.

**II. Limitations Issues: TILA, Fraud, Financial Elder Abuse, Unfair Business Practices.**

Even if TILA applied to the transaction at issue here, the claim would be barred by the statute of limitations. For similar reasons, Plaintiff's claims for fraud, financial elder abuse, and unfair business practices are also time-barred.

There are two relevant limitations periods for TILA claims: one year for claims seeking damages and three years for claims seeking rescission. 15 U.S.C. §§ 1640(e), 1635(f); *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 3d 862, 873 (N.D. Cal. 2010). The clock starts running on actions for damages upon a violation of TILA, which occurs when the consumer "becomes contractually obligated on a credit transaction." *Davenport*, 725 F. Supp. 3d at 872. As for claims for rescission, the limitations period "shall expire" three years after the transaction is consummated or the property is sold, whichever occurs first. *Id.* at 873. The three-year rescission period is absolute and cannot be tolled. *Id.*; *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). Mr. Foster became contractually obligated on the transaction in June 2010, when he executed the contract and consummated the agreement. Thus, unless Plaintiff can argue that the limitations period should run from another date due to the discovery rule or (for the damages claim) should be tolled, the TILA claim for damages expired in 2011 and the claim for rescission expired in 2013.

As for Plaintiff's three state-law claims mentioned above, under California Code of Civil Procedure Section 337, the limitations period for rescission for a contract in writing on the basis of fraud is four years from the date upon which the aggrieved party discovers the facts constituting the fraud or mistake. "A party alleging fraud has a duty to exercise diligence in discovering the fraud, such that the . . . limitation begins to run when that party 'has the opportunity to obtain knowledge from sources open to his investigation.'" *Rivera v. BAC Home Loans Servicing, LP*, 756 F. Supp. 2d 1193, 1200 (quoting *Lee v. Escrow Consultants, Inc.*, 210 Cal. App. 3d 915, 921 (1989)). Similarly, the limitations period for actions for damages for financial elder abuse is "four years after the plaintiff discovers or, through the exercise of reasonable diligence, should have discovered, the facts constituting the financial abuse." *Giordano v. Wachovia Mortg., FSB*, No. 5:10-cv-04661-JF, 2011 WL 1130523, at *3 (N.D. Cal. Mar. 25, 2011) (quoting Cal. Welf. & Inst. Code § 15657.7). Finally, the limitations period for an unfair business practices claim is "four years after the cause of action accrued." Cal. Bus. & Prof. Code § 17208. As with the previous claims, the discovery rule may postpone accrual "until a plaintiff discovers or has reason to discover" the unfair competition law claim. *Glue-Fold, Inc. v. Slaughterback Corp.*, 82 Cal. App. 4th 1018, 1029 (2000).

### a. The Discovery Rule.

Plaintiff argues that the discovery rule should apply, and that the clock should not have started running on his TILA, fraud, financial elder abuse, and unfair business practices claims until he discovered the true nature of the transaction in 2016. Under the discovery rule, "the limitations period does not begin to run until the plaintiff discovers (or reasonably should discover) that he has been injured." *Perez v. Wells Fargo Bank*, No. C-11-02279 JCS, 2011 WL 3809808, at *14 (N.D. Cal. Aug. 29, 2011). Plaintiffs asserting the discovery rule must plead facts adequate to support its application. *Id.*

Plaintiff alleges that Mr. Foster could not discover the true nature of the agreement because of "false and deliberately misleading" representations by EquityKey that the contract was not a loan and because of Mr. Foster's "age and mental status." Plaintiff asserts that he only discovered his claims after his father's death and with the assistance of counsel.

Plaintiff's argument that the discovery rule should apply fails for several reasons. First, the facts relevant to the discovery of the claims at issue here were included on the face of the contract signed by Mr. Foster. Thus, Mr. Foster had all of the information necessary to discover his claims through the exercise of diligence in 2010, a time at which Plaintiff concedes he was competent. Allegations that Mr. Foster did not understand the terms of the contract he signed or did not consult with legal counsel do not establish that he could not reasonably have learned of his claims had he been diligent. *Nevarez v. Wells Fargo, N.A.*, No. C-12-1660 JCS, 2012 WL 2428233 (N.D. Cal. June 26, 2012); *Perez v. Wells Fargo Bank*, No. C-11-02279 JCS, 2011 WL 3809808, at *14 (N.D. Cal. Aug. 29, 2011). Second, defendant's allegedly deceptive statements do not excuse Plaintiff's delay, as the transaction documents expressly discussed and disclosed the terms of the agreement. *Hague v. Wells Fargo Bank, N.A.*, No. C11-02366 THE, 2012 WL 1029668, *5 (N.D. Cal. Mar. 26, 2012) (citing *Parsons v. Tickner*, 31 Cal. App. 4th 1513, 1525 (1995)) ("Where there existed, from the time the loan was made, papers which disclosed the terms of the loan, it would seem that reasonable diligence would have enabled Plaintiff to discover the problem."). Additionally, despite Plaintiffs' allegations of EquityKey's deceptive statements, the agreement itself encourages the exercise of diligence, advising potential signatories to seek the

counsel of an attorney or financial advisor before signing.

Mr. Foster's failure to discuss the transaction with Plaintiff also does not excuse his delay. Plaintiff's claims are the same as Mr. Foster's, so the limitations clock does not start fresh upon Mr. Foster's death. And Mr. Foster's statement to Plaintiff that "he had made a deal for essentially 'free money'" demonstrates that Plaintiff was on notice of the transaction (and its potentially suspect nature) during Mr. Foster's life. These allegations do not support the application of the discovery rule here, and, as a result, Plaintiff's claims are time-barred unless the doctrine of equitable tolling applies.

### b. Equitable Tolling.

"[E]quitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of [a] TILA action." *King v. Cal.*, 784 F.2d 910, 915 (9th Cir. 1986). Equitable tolling applies where "despite all due diligence, [plaintiff] is unable to obtain vital information bearing on the existence of the claim." *Hensley v. United States*, 531 F.3d 1052, 1057-58 (9th Cir. 2008). "The doctrine is not available to avoid the consequences of one's own negligence and does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Id.*, at 1058 (quoting *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992)). A motion to dismiss on statute of limitations grounds should be granted only when the assertions of the complaint, read liberally, do not permit the plaintiff to prove that the limitations period was tolled. *Alakozai v. Valley Credit Union*, No. C10-02454 HRL, 2010 WL 5017173, at *4 (N.D. Cal. Dec. 3, 2010).

Plaintiff does not state any plausible allegations suggesting that Plaintiff and Mr. Foster were unable to obtain vital information about their claims despite the exercise of due diligence beyond (1) the conclusory assertions that EquityKey made deceptive and misleading statements about the transaction and (2) the claim that Mr. Foster did not understand the transaction. As stated above, however, the information Plaintiff needed to discover his claims was available on the face of the transaction documents, regardless of any misleading statements made by EquityKey. And Mr. Foster's lack of understanding of the contract could have been addressed by the exercise

11

1  of due diligence in consulting counsel earlier, during the limitations period. *See Finuliar v. BAC*
2  *Home Loans Servicing*, No. C-11-02629 JCS, 2011 WL 4405659, at *8 (N.D. Cal. Sept. 21, 2011)
3  (declining to apply the equitable tolling doctrine where the plaintiff alleged that she could not
4  understand the express terms of her loan and where she did not discover her claims until she
5  retained counsel). For these reasons, and the reasons stated in the discussion above concerning the
6  discovery rule, Plaintiff's argument that equitable tolling should apply fails.

Since neither the discovery rule nor equitable tolling applies, Plaintiff's TILA, fraud, financial elder abuse, and unfair business practices claims had each expired by 2014, and each is time-barred.

### III. Quiet Title, Cancellation of Instruments, Declaratory Relief.

The California Supreme Court has explained that "no statute of limitations runs against a plaintiff seeking to quiet title while he is in possession of the property." *Muktarian v. Barmby*, 63 Cal. 2d 558, 560-61 (1965). As Plaintiff remains in exclusive and undisputed possession of the property, the limitations period—regardless of which period applies—has not started to run on his claim for quiet title. *See id.* (holding that the three-year statute of limitations for fraud or mistake did not bar an action for quiet title while the plaintiff was still in possession). Defendant's reliance on *Ankoanda v. Walker-Smith*, 44 Cal. App. 4th 610 (1996), to argue that *Muktarian* does not apply here is unavailing. In *Ankoanda*, unlike in *Muktarian*, the plaintiff was a co-tenant and lacked exclusive possession of the property. 44 Cal. App. 4th at 618. Here, as EquityKey acknowledges in the transaction documents, Plaintiff is in exclusive possession of the property. *See* Dkt. No. 7, Ex. 1, § (A)(1) ("Your grant of the option to [EquityKey] does not give us any present ownership or possession rights with respect to the Property."); *see also Salazar v. Thomas*, 236 Cal. App. 4th 467, 469-482 (discussing possession). EquityKey's cloud on Plaintiff's title does not dispute or disturb Plaintiff's possession, and so the statute of limitations has not started running. *See Salazar*, 236 Cal. App. 4th at 478 ("mere notice of an adverse claim is not enough to commence the owner's statute of limitations").

As the quiet title claim is not time-barred, the court considers EquityKey's argument that Plaintiff fails to state a claim for quiet title upon which relief may be granted.

12

To state a claim for quiet title, a plaintiff must allege "that he is the owner of certain described real property, that defendants claim an interest therein adversely to him, that such claim is without right, and that the defendants have no estate, title or interest whatever in said premises or any part thereof . . . ." *Ephraim v. Metropolitan Trust Co. of Cal.*, 28 Cal. 2d 824, 833 (1946); *see also Wolfe v. Lipsy*, 163 Cal. App. 3d 633, 638 (1985), *disapproved of on other grounds by Droeger v. Friedman, Sloan & Ross*, 54 Cal. 3d 26 (1991). "[W]here the plaintiff seeks to have his title to property quieted as to an instrument which is attacked on the ground of fraud, then . . . the defrauded party must plead the pertinent facts relied upon as grounds for setting aside said instrument." *Borneman v. Salinas Title Guar. Co.*, 66 Cal. App. 2d 500, 503-04 (1944); *see also Markowicz v. J.P. Morgan Chase Bank, N.A.*, No. B233602, 2012 WL 3716889, at *3 (Cal. Ct. App. Aug. 29, 2012) (dismissing a quiet title claim brought on the basis of the cancellation of an instrument because the plaintiff did not adequately plead the fraud needed to justify cancelling the instrument); 11A Cal. Jur. 3d Cancellation and Reformation § 4 (Feb. 2017) ("[W]hen, in an action to quiet title, the plaintiff adds to the usual allegations averments showing a deed from the plaintiff to the defendant, the plaintiff must, in order to show that the deed was procured by fraud, plead the facts constituting the fraud.").

Here, EquityKey argues that Plaintiff has failed to plead that the cloud on his title cast by the performance deed of trust was procured by fraud, because the alleged misrepresentations in the transaction documents are not false or misleading. The court confines its analysis to the statements in the transaction documents, as Plaintiff admitted at the hearing on this motion that he was not aware of any misrepresentations beyond those statements.

The complaint alleges that EquityKey misrepresented the nature of the agreement, calling it an option contract (and affirmatively representing that the transaction is "not a loan") when it was, in reality, a disguised high-interest loan or mortgage. Dkt. No. 1, Ex. A, ¶¶ 1, 14, 19, 20, 21. The court has already concluded that the transaction is excluded from the coverage of TILA. This conclusion does not inevitably mean that the transaction is "not a loan" under state law. *Cf. Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1095 (N.D. Cal. 2011) (noting that TILA's preemptive reach is limited to required disclosures and that the statute does not "otherwise

13

1   regulate the particulars of a loan agreement."). The court, however, also concludes that the
2   transaction is "not a loan" within the meaning of California law.

3   The California Supreme Court has distinguished loans from sales. A sale, the Court has
4   explained, "is the transfer of the property in a thing for a price in money." *Milana v. Credit*
5   *Discount Co.*, 27 Cal. 2d 335, 339-40 (1945); *see also West Pico Furniture Co. of L.A. v. Pac. Fin.*
6   *Loans*, 2 Cal. 3d 594, 671-72 (1970). A loan, in contrast, is "the delivery of a sum of money to
7   another under a contract to return at some future time an equivalent amount with or without an
8   additional sum agreed upon for its use." *Milana*, 27 Cal. 2d 335, 339-40; *see also* Cal. Civ. Code
9   § 1912. Though a court's determination of whether a transaction is a sale or a loan is usually a
10  question of fact, where, as here, the details of the transaction are not in dispute, this determination
11  is a question of law. *See Kunert v. Mission Fin. Servs. Corp.*, 110 Cal. App. 4th 242, 255-56
12  (2003); *cf. Ghirardo v. Antonioli*, 8 Cal. 4th 791, 799- 801 (1994) (determining that whether a
13  particular transaction was a loan subject to usury law or an exempt transaction of a different
14  character was a question of law).

15  Mr. Foster sold EquityKey an option. An option is not an interest in real property, but
16  rather a contractual right, one that may become an interest in property when it is exercised. *Cyr v.*
17  *McGovran*, 206 Cal. App. 4th 645, 648 (2012). If exercised, EquityKey's option becomes an
18  interest in the appreciation in value of Mr. Foster's property (as determined by the aggregate
19  increase in value of homes in his area). EquityKey may ultimately choose not to exercise its right;
20  but this does not change the fact that Mr. Foster conveyed to EquityKey a valuable right to claim,
21  if it chooses, an interest in real property in exchange for money (i.e., the option premium). This
22  was the essence of the transaction—the sale of a thing for a price in money. Plaintiff might argue
23  that the "thing" transferred was the right to recover the option premium at a later date, with or
24  without interest. But the features of the transaction—especially the fact that EquityKey might not
25  recover the full option premium—makes this characterization unreasonable.

26  The transaction is at is described—it is the sale of an option, and not a loan. As a result,
27  Plaintiff—whose only allegations that EquityKey's claim to title is "without right" rely on the
28  (rejected) assertion that the transaction is a loan—has not plead that EquityKey's claim to title is

14

"without right" and has not adequately plead a claim for quiet title upon which relief may be granted. For the same reasons—the absence of allegations as to any basis for the invalidity of the transaction (and thus of any actual controversy regarding it)—the court concludes that the cancellation of instruments and declaratory relief claims must also fail.[3]

## CONCLUSION

As Plaintiff's TILA claim fails because the transaction is excluded from that statute's disclosure requirements, amendment would be futile and the court grants the motion to dismiss as to this claim without leave to amend. The fraud, financial elder abuse, and unfair competition law claims are dismissed on the grounds that they are time-barred. A plaintiff who fails to plead facts to support equitable tolling "normally should be permitted to amend his or her complaint" to plead such facts. *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (2003). As the facts giving rise to these claims were apparent on the face of the transaction documents and discoverable through the exercise of due diligence, however, the court is persuaded that amendment would be futile and grants the motion to dismiss as to these claims without leave to amend.

Finally, the quiet title, cancellation of instruments, and declaratory relief claims are dismissed on the grounds that Plaintiff failed to allege a basis for invalidating the performance deed of trust. As the court is not persuaded that amendment to cure this defect would be futile, the court dismisses these claims with leave to amend. Plaintiff may file an amended complaint within 21 days of the date of this order. Failure to do so will result in dismissal of the complaint with prejudice. Plaintiff may not add any new claims without first obtaining leave of the court.

**IT IS SO ORDERED.**

Dated: 5/9/2017

_____
HOWARD R. LLOYD
United States Magistrate Judge

---

[3] As the court dismisses the cancellation of instruments and declaratory relief claims because it is unclear what underlying wrongful conduct they rely on, the court declines to reach whether these claims are barred by the statute of limitations (as which limitations period applies depends on the substantive nature of these claims).

15