UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON FOSTER,<br><br>    Plaintiff,<br><br>v.<br><br>EQUITYKEY REAL ESTATE INVESTMENTS L.P.,<br><br>    Defendant. | Case No.17-cv-00067-HRL<br><br>**ORDER RE: DEFENDANT'S MOTION FOR AWARD OF ATTORNEYS' FEES**<br><br>Re: Dkt. No. 28 |

Defendant EquityKey Real Estate Investments L.P. ("EquityKey") moves for an award of attorneys' fees from the Plaintiff, Aaron Foster ("Plaintiff"). For the reasons explained below, the Court grants EquityKey's motion in part and denies it in part.

**I.  BACKGROUND**

In June 2010, Plaintiff's father, Michael Foster ("Mr. Foster"), entered into a contract with EquityKey. Dkt. No. 22. Under the contract, EquityKey agreed to pay Mr. Foster a $196,000 "option payment" in exchange for Mr. Foster granting EquityKey the right to participate in 100% of the appreciation of Mr. Foster's residence over a set term of years. *Id.* The contract provided for an award of attorneys' fees to the prevailing party in any action on the contract. Dkt. No. 7, Ex. A ¶ 22. Plaintiff filed this lawsuit against EquityKey, alleging, *inter alia,* that the contract between Mr. Foster and EquityKey was a high-interest loan in disguise, that it was subject to the Truth in Lending Act ("TILA") (15 U.S.C. § 1601, *et seq.*), and that EquityKey violated TILA by failing to make statutorily-required disclosures to Mr. Foster. Dkt. No. 1, Ex. A. The Court ultimately granted EquityKey's motion to dismiss, concluding that the contract between Mr.

Foster and EquityKey was not a loan within the meaning of TILA, and that EquityKey was therefore not subject to the act's disclosure requirements.[1]  Dkt. No. 22.  Now, EquityKey claims it is entitled to attorneys' fees under the contract.  Dkt. No. 28.

Both parties have consented to magistrate judge jurisdiction.  Dkt. Nos. 10, 11.

## II. LEGAL STANDARD

Section 1717 of the California Civil Code states that in any action on a contract, where the contract specifically provides for the award of attorney fees and costs, the court shall award reasonable fees to the prevailing party.  Cal. Civ. Code § 1717(a).  Once the prevailing party is identified, the court sets fees with lodestar approach, i.e. the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983*), abrogated in part on other grounds by Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782 (1989); *see also PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1095 ("the fee setting inquiry in California ordinarily begins with the 'lodestar' . . . .").  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Hensley*, 461 U.S. at 433.  A trial court's calculation of reasonable fees will be disturbed on appeal only for abuse of discretion.  *PLCM Grp.*, 22 Cal. 4th at 1094-95.

## III. DISCUSSION

The parties in this case agree that: (1) Plaintiff's suit was on the contract within the meaning of Cal. Cal. Civ. Code § 1717; (2) EquityKey is the prevailing party in the case; and (3) EquityKey is entitled to attorneys' fees under the contract.  Before engaging in the lodestar analysis, however, the Court briefly addresses and rejects Plaintiff's argument that TILA prohibits the Court from awarding EquityKey fees related to Plaintiff's TILA claim.  Plaintiff argues that because TILA instructs courts to award attorneys' fees to consumers who successfully bring claims under the act – but does not provide for attorney fee awards for creditors who successfully defend TILA claims – EquityKey is not entitled to fees incurred defending against Plaintiff's TILA claim.  Dkt. No. 29.  Plaintiff's reliance on TILA's attorney fee provision is misplaced.  The

---

[1] The Court also concluded that Plaintiff's claims were time-barred.  Dkt. No. 22.

2

Court specifically concluded that the contract between Mr. Foster and EquityKey was not subject to TILA. Dkt. No. 22. TILA, therefore, is not relevant to whether EquityKey is entitled to fees. Instead, EquityKey's right to fees, if any, flows from the contract. *See Bonner v. Redwood Mortg. Corp.*, 2010 WL 2528962, at *3 (N.D. Cal. June 18, 2010) ("Defendants do not seek relief under TILA, however, but rather under the parties' contractual agreement. Recovery of defendants' attorneys' fees under the contract is not prohibited by TILA in the absence of clear congressional intent to preempt.") (citing *Weber v. Langholz*, 39 Cal. App. 4th 1578, 1586 (1995)). In addition, Plaintiff's argument that *Bass v. First Pacific Networks*, 219 F.3d 1052 (9th Cir. 2000), somehow permits the Court to ignore state law when awarding attorneys' fees is unavailing. In *Bass*, the Ninth Circuit considered whether a federal court may apply California law to set attorneys' fees where the fees were incurred enforcing a supersedeas bond that had been posted under Federal Rule of Civil Procedure 62(d). 219 F.3d at 1054-55. The Ninth Circuit concluded that the issue was purely procedural and that it "creat[ed] no choice of law concerns." *Id.* The case has no bearing on whether attorneys' fees are recoverable under a contract that is governed by state law.

### A. Reasonableness of Time Spent

"In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "Those hours may be reduced by the court where documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Id.* (citing *Hensley*, 461 U.S. at 433-34).

As an initial matter, it is difficult to tell, from the materials submitted by EquityKey, how many hours counsel spent working on the case. EquityKey offers multiple versions of its billable hour totals, and the various records are inconsistent with one another. For example, in an affidavit attached to the fee motion, one of EquityKey's attorneys, Sarah F. Powers, describes the fee request as follows:

- Sarah F. Powers
  - 13.75 hours at $550 per hour
  - 90.50 hours at $565 per hour
- Christopher Frost
  - 1.25 hours at $575 per hour
  - 7.50 hours at $650 per hour

Dkt. No. 28-1, Powers Decl. ¶ 10. Counsel states that EquityKey is requesting fees for 112.25 hours, *id.*, but the sum of the hours listed above is actually 113. Separate from Ms. Powers' declaration, EquityKey submitted an itemized timesheet that offers a more detailed account of counsel's work on the case. Dkt. No. 28-1, Powers Decl., Ex. A at 7-10. The timesheet has 48 entries, with fields indicating the date, attorney, task, hours expended, and the relevant hourly rate. *Id.* The 48 entries add up to 114.25 billable hours, but the timesheet itself describes the total number of hours as 159.75. *Id.* at 10. The discrepancy may be due to the decision by counsel to exclude from its request "$27,600 that we removed from our billings in advance of" moving for fees, Dkt. No. 28-1, Powers Decl. ¶ 9, but the actual calculations are not immediately apparent. Finally, EquityKey offers a "Fee Recap" chart that summarizes the total number of hours charged per attorney. This third set of figures indicates that, over the course of the case, Ms. Powers billed a total of 111.5 hours, and Mr. Frost billed a total of 40.25 hours. Dkt. No. 28-1, Powers Decl., Ex. A at 11.

Given the conflicting records, the Court will rely on the itemized timesheet because it offers the most detailed account of the work for which EquityKey is now seeking fees. The Court begins the lodestar analysis, then, with a total of 114.25 hours of billable work, separated by attorney and requested rate as follows:

- Sarah F. Powers
  - 13.75 hours at $550 per hour
  - 90.50 hours at $565 per hour
- Christopher Frost
  - 1.25 hours at $575 per hour

4

- 8.75 hours at $650 per hour

Turning to specific entries in EquityKey's timesheet, Plaintiff argues that EquityKey should not be awarded for almost ten hours of work preparing an "option exercise letter," which EquityKey mailed to Plaintiff soon after the start of this litigation. Dkt. No. 29. Plaintiff also objects, more generally, to counsel's use of block billing, and to counsel's practice of billing by the quarter-hour. *Id.* Block billing is not per se objectionable, but a court may reduce hours where block billing makes it difficult to determine how much time was spent on particular activities. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007); *Apple, Inc. v. Samsung Elecs. Co.*, 2012 WL 5451411, at *5 (N.D. Cal. Nov. 7, 2012) (observing that block billing can inflate hours by between ten and thirty percent); *Jaramillo v. County of Orange*, 200 Cal. App. 4th 811, 830 (2011). Similarly, a court may reduce an award where quarter-hour billing the risk of hours being inflated, or otherwise makes it difficult to assess the reasonableness of the time spent on litigation. *See Welch*, 480 F.3d at 949.

Overall, the Court concludes that EquityKey has not persuasively substantiated some of its timesheet entries, and rules as follows:

### 1. Option Exercise Letter

The Court agrees with Plaintiff as to the option exercise letter. The letter stated that in light of Plaintiff's suit, EquityKey believed it had the right to exercise its option under the contract. Dkt. No. 30-1, Powers Decl., Ex. A. The letter went on to demand payment from Plaintiff, and suggested that the amount owed to EquityKey would grow if litigation were to continue. *Id.* EquityKey's timesheet includes four entries (Feb. 7, Feb. 14, Feb. 15, and Feb. 16), totaling 11.25 hours, that seem to reference the option exercise letter:[2] Dkt. No. 28-1, Powers Decl., Ex. A at 8. Counsel describes the letter as an "integral part of [EquityKey's] litigation strategy," Dkt. No. 30-1, Powers Decl. ¶3, but the Court doubts that researching and drafting such a straightforward document could have reasonably taken more than ten hours. Moreover, all of the entries related to the letter are block-billed, Dkt. No. 28-1, Powers Decl., Ex. A at 8, making it

---

[2] Plaintiff objected to the entries from Feb. 14 through Feb. 17, Dkt. No. 29, but the Court independently identified the Feb. 7 timesheet entry as relating the option exercise letter issue.

5

even more difficult for the Court to assess the reasonableness of the time spent preparing the letter. *See Welch*, 480 F.3d at 948. Accordingly, the Court deducts as follows: 0.75 hours from the Feb. 7 entry; 1 hour from the Feb. 14 entry; 1.25 hours from the Feb. 15 entry; and 1.25 hours from the Feb. 16 entry.

### 2. Other Excessive Fees

In addition, based on its independent review of the timesheet, the Court finds the following entries to be excessive:

- Counsel's timesheet includes five entries – Dec. 21, Dec. 22, Dec. 22 (Frost)[3], Dec. 23, and Jan. 6 – that reference EquityKey's removal of this action from state court. Dkt. No. 28-1, Powers Decl., Ex. A. Three of the five entries, for Dec. 21, 2016, Dec. 23, 2016, and Jan. 6, 2017, are block-billed, referencing the notice of removal as well as other case-related tasks. *Id.* Removal is a straightforward, non-contested procedure, and the block billing makes it difficult for the Court to evaluate the reasonableness of the time expended. Accordingly, the Court deducts as follows: 1.75 hours from the Dec. 21 entry; 2 hours from the Dec. 22 entry; 0.5 hours from the Dec. 22 (Frost) entry; 1.25 hours from the Dec. 23 entry; and 1.75 hours from the Jan. 6 entry.

- Counsel apparently spent 0.25 hours on Jan. 17, 2017 preparing a form that indicated EquityKey's consent to magistrate judge jurisdiction. *Id.* Notably, this was the only task for which counsel billed EquityKey for 0.25 hours. This belies the claim that despite the quarter-hour billing, counsel rounded down, rather than up, when billing work to EquityKey. Dkt. No. 30-1, Powers Decl. ¶ 4. Moreover, the consent/declination form is exceedingly simple, with check-boxes to indicate whether a litigant consents to magistrate judge jurisdiction. In light of both the simplicity of the task and counsel's quarter-hour billing, the Court declines to award any fees for the entry. *See Welch*, 480 F.3d at 949.

---

[3] All time entries are related to Sarah F. Powers unless otherwise noted.

- On Feb. 20, 2017, counsel spent eight hours traveling to San Jose and researching and preparing for the hearing on EquityKey's motion to dismiss. *Id.* On Feb. 21, however, counsel spent only 4.5 hours preparing for, arguing, and returning home from the hearing on the motion. The Court does not believe that the time spent on research the day before the hearing, while counsel was in transit, was reasonably expended, and deducts 3.5 hours from the Feb. 20 entry.

Based on the foregoing, the Court deducts a total of 15.25 hours from EquityKey's requested total, leaving EquityKey's reasonably expended billable hour total as follows:

- Sarah F. Powers
    - 8.75 hours at $550 per hour
    - 80.75 hours at $565 per hour
- Christopher Frost
    - 0.75 hours at $575 per hour
    - 8.75 hours at $650 per hour

### B. Reasonableness of Hourly Fees

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers*, 796 F.2d at 1210-11 (citing *Blum v. Stenson*, 465 U.S. 886, 895 n.11.) "Generally, the relevant community is the forum in which the district court sits." *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—*in addition to the attorney's own affidavits*—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum*, 465 U.S. at 895 n.11 (emphasis added). The court may rely on its own familiarity with the local legal market to evaluate and set a reasonable hourly rate. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

EquityKey seeks fees for Ms. Powers of $550 and $565 per hour, and for Mr. Frost of

1   $575 and $650 per hour. The timesheet suggests that both attorneys' hourly rates increased
2   around January 2017. In support of the rates requested, EquityKey offers the affidavit of Ms.
3   Powers – but not Mr. Frost – who avers that the requested fees are "consistent with [her firm's]
4   normal billing rates." Dkt. No. 28-1, Powers Decl.¶ 10; *but see Chalmers*, 796 F.2d at 1210
5   ("Determination of a reasonable hourly rate is not made by reference to rates actually charged the
6   prevailing party.") According to the affidavit, Ms. Powers, an associate, received her law degree
7   from the University of Chicago, and has practiced commercial litigation for over 11 years. Dkt.
8   No. 28-1, Powers Decl.¶ 11. Mr. Frost, a partner, has practiced for more than 18 years since
9   receiving a law degree from Pepperdine University, where he also serves as an adjunct professor.
10  *Id.* at ¶ 12.

11  EquityKey also cites to a handful of cases from this district to support the requested fees,
12  but those cases are distinguishable, in part because the parties in those cases produced evidence,
13  besides a single affidavit from counsel, to support the requested hourly rates. In *Swallow v. Toll
14  Brothers*, 2009 WL 513486 (N.D. Cal. Mar. 2, 2009), for example, the court found $675 to be a
15  reasonable hourly fee on the basis of "declarations by other practitioners in the field . . . who are
16  familiar with [the attorney's] skills and expertise stating that the rate sought for [the attorney] is in
17  line with the rates charged by other attorneys' [*sic*] in the Bay area with similar experience and
18  skills for comparable work." 2009 WL 513486, at *6; *see also Xu v. Yamanaka*, 2014 WL
19  3840105 (N.D. Cal. Aug. 10, 2014) (finding $850 per hour to be reasonable despite a "less than
20  robust" showing by counsel, who provided the court with multiple declarations, as well as survey
21  data on hourly rates at peer firms). In sum, EquityKey has not made the necessary showing to
22  support the reasonableness of the charged hourly rate.

23  Based on this Court's familiarity with the range of rates generally charged by attorneys in
24  this district, the Court finds the requested rates are on the high end of what is charged for cases of
25  comparable magnitude and complexity, and for attorneys of comparable skill, experience, and
26  reputation. True, the case raised a novel question as to the scope of TILA. Yet courts in this
27  district have awarded lower fees for cases of comparable or greater magnitude or complexity. *See
28  Hydros Bottle LLC v. Stephen Gould Corp.*, 2017 WL 3453350 (N.D. Cal. Aug. 10, 2017) ($600

per hour reasonable for breach of contract case resolved by an Offer of Judgment under Federal Rule of Civil Procedure 68); *Garcia v. Stanley*, 2017 WL 897429 (N.D. Cal. Mar. 7, 2017) ($500 per hour reasonable in consumer credit case decided on summary judgment after considerable litigation). Accordingly, the Court finds that the following hourly fees are reasonable:

- Sarah F. Powers
    - 2016: $500
    - 2017: $515
- Christopher Frost
    - 2016: $525
    - 2017: $575

Based on the foregoing, EquityKey is entitled to a total of $51,386.25 in fees, broken down by attorney and rate as follows:

- Sarah F. Powers
    - 8.75 hours at $500 per hour = $4,375.00
    - 80.75 hours at $515 per hour = $41,586.25
- Christopher Frost
    - 0.75 hours at $525 per hour = $393.75
    - 8.75 hours at $575 per hour = $5,031.25

**ORDER**

Accordingly, EquityKey's request for fees is granted in part and denied in part as follows: the Court awards EquityKey $51,386.25 in fees.

**IT IS SO ORDERED.**

Dated: 9/25/2017

HOWARD R. LLOYD
United States Magistrate Judge